**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 6 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN, Lead Plaintiff, <br><br> Plaintiff - Appellant, <br><br> and <br><br> DAVID RAMOS, <br><br> Plaintiff, <br><br> v. <br><br> COMERICA INCORPORATED; CURTIS C. FARMER; JAMES J. HERZOG, <br><br> Defendants - Appellees. | No. 24-7673 <br><br> D.C. No. 2:23-cv-06843-SB-JPR <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Submitted February 4, 2026[**]
Pasadena, California

Before: LEE, KOH, and DE ALBA, Circuit Judges.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Appellants Nova Scotia Health Employees' Pension Plan ("NSHEPP") and David Ramos brought this putative securities class action under Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 against Appellees Comerica Incorporated ("Comerica"); Comerica's CEO, Curtis C. Farmer ("Farmer"); and Comerica's CFO, James J. Herzog. On appeal, Appellants argue that the district court erred in dismissing the Third Amended Complaint ("TAC") for failure to state a claim, denying leave to amend, and denying reconsideration. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review the district court's dismissal of a complaint for failure to state a claim de novo. "On review, we accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)). "The court need not, however, accept as true allegations that . . . . are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted), *amended on other grounds,* 275 F.3d 1187 (9th Cir. 2001). "We review the denial of leave to amend for an abuse of discretion, but we review the question of futility of amendment de novo." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 534 (9th Cir. 2022) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016)). We review denial of a

2

motion for reconsideration for abuse of discretion. *Phelps v. Alameida*, 569 F.3d 1120, 1131 (9th Cir. 2009).

    1.     NSHEPP alleged that Comerica, as Financial Agent of the Department of Treasury's Bureau of Fiscal Service's ("Fiscal Service") Direct Express program, violated the governing regulations and contractual requirements of the Direct Express program, and that Comerica and its executives committed securities fraud by hiding the violations. The district court correctly dismissed the TAC for failure to adequately allege that Appellees' fraud caused Appellants' loss.

Loss causation, "i.e., a causal connection between the material misrepresentation and the loss" is a basic element of a Section 10(b) claim. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).[1] "So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate." *Gilead*, 536 F.3d at 1057.

"Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a plaintiff suffers a loss as a result of the market's reaction." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010). "The most common way for plaintiffs to

---

[1] NSHEPP's Section 20(a) claim depends on its Section 10(b) claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

prove that the truth became known is to identify one or more corrective disclosures. A corrective disclosure occurs when information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) (internal quotes and citations omitted).

NSHEPP alleged that three corrective disclosures revealed risks regarding Comerica's probability of being renewed as Financial Agent for the Direct Express Program.[2] The district court correctly concluded that none of these alleged disclosures established loss causation.

### A. First Disclosure and Alleged Re-concealment

The first alleged disclosure is a May 29, 2023 *American Banker* article ("*AB* Article") that NSHEPP alleges revealed compliance issues with two third-party vendors. The *AB* Article revealed information from nonpublic documents indicating that Comerica's two third-party vendors, i2c Inc. ("i2c") and Conduent Business Services ("Conduent"), had failed to follow regulatory and contractual requirements for processing Direct Express cardholder disputes. Among other violations in processing cardholding disputes, the *AB* Article revealed that i2c had

---

[2] Before the district court, NSHEPP also argued that various analyst reports correlated with "small price drops" constituted corrective disclosures. The district court concluded that none of the reports constituted corrective disclosures because these reports largely pre-dated the *AB* Article and were unrelated to the Direct Express program. None of these reports are a basis for NSHEPP's appeal.

processed Direct Express cardholder disputes in Pakistan, which violated the FAA's requirement that all Direct Express services be provided in the United States by United States citizens or lawful permanent residents. The *AB* Article also summarized already public information showing that Comerica had long been subject to various complaints and investigations regarding its compliance deficiencies and dispute processing procedures, including a congressional investigation in 2018, a class action lawsuit in 2019, and audits by the Treasury's Office of Inspector General ("OIG") with reports published in 2014, 2017, and 2020.

Because Comerica's stock price decline following the *AB* Article was modest, typical, and quickly reversed, NSHEPP has not plausibly alleged that the fraud disclosed by the *AB* Article caused Comerica's drop in stock price. Where there is a "quick and sustained [stock] price recovery after the modest . . . drop" that follows the alleged corrective disclosure, the recovery "refutes the inference that the alleged concealment of [the] fact caused any material drop in the stock price." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021). A fall in share price of 10% or less may be considered modest. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (holding that plaintiff failed to plead loss causation where defendant's "stock recovered very shortly after the modest 10% drop").

Specifically, Comerica's stock decreased by a total of 7.4% over two days after the *AB* Article was published on May 29, 2023, which is smaller than the 10% drop that this court considered "modest" in *Metzler*, 540 F.3d at 1064. Additionally, the May 30 and 31, 2023 price decreases followed a trend of declining stock prices over the previous several days. This drop was well within Comerica's typical stock price movement and reversed over the next two days. Beginning June 2, 2023 through late September 2023, for approximately four months, Comerica's stock price remained higher than it had been before the *AB* Article was published.

There is no merit to NSHEPP's argument that the reversal in Comerica's stock price was caused by a letter from Farmer ("Farmer Letter"), published in *American Banker* on June 1, 2023. NSHEPP alleges that the Farmer Letter misled the market to believe that "the Direct Express program issues were limited to a single vendor, were a surprise to Comerica, and were resolved in 2020." Specifically, NSHEPP argues that the following five statements were false or misleading:

- "The scope of the Direct Express program requires coordinating many stakeholders and working diligently to ensure that federal regulations are being followed."

- "Comerica took steps to protect Direct Express users when it became aware that a third-party vendor had not followed program protocols for reviewing customer inquiries."

- "These steps were taken in cooperation with the Fiscal Service in 2020."

- "[W]e continue to perform regular assessments, including independent audits to ensure the program is managed in compliance with applicable requirements with ongoing oversight from the Fiscal Service and Treasury Department."

- "We . . . act quickly if we find issues – from addressing individual customer concerns to oversight of vendors."

NSHEPP has not adequately pled that the Farmer Letter made false or misleading statements or omissions that "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). An omission is materially misleading if there is a "substantial likelihood that [the document] would have been viewed by the reasonable investor as having significantly altered the total mix of information available" to investors. *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (citation modified).

The first statement is simply an expression of the requirements of the Direct Express program and is neither false nor misleading regarding Comerica's compliance practices.

The next three statements are not alleged to be false, and no "reasonable investor" would have considered the statements made or information omitted to have changed the "total mix of information available." *Retail Wholesale & Dep't*

7

*Store Union Loc. 338 Ret. Fund*, 845 F.3d at 1274 (citation modified). Put another way, a reasonable investor would not have concluded that only one of Comerica's vendors had compliance issues or that all compliance issues with both vendors had been resolved in 2020 based on Comerica's claim that it had taken steps to address unspecified compliance issues with one of its vendors in 2020. The *AB* Article itself made clear that Comerica continued to have issues with third-party vendor compliance past 2020, as it reported on a lawsuit regarding issues with Comerica and Conduent's Direct Express dispute processing with a class period of 2015 to 2022 and a Consumer Financial Protection Bureau investigation into Comerica's dispute processing practices since at least 2021. Critically, the Farmer Letter did not deny the primary revelation of the *AB* Article, which was that one vendor has dispute processing centers located in Pakistan, or indicate that the issue had been resolved in 2020.

The final allegedly misleading statement, that Comerica "act[s] quickly if [it] finds issues," is the kind of "mildly optimistic, subjective assessment [that] hardly amounts to a securities violation" and that instead has been considered "non-actionable puffing." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). "[P]rofessional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Id.* (quoting *VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D. Cal. 1992), *aff'd,* 11 F.3d 865 (9th Cir. 1993)).

8

### B. Second Disclosure

The second disclosure is the May 23, 2024 announcement of an enforcement agreement between the Office of the Comptroller of the Currency and Comerica's wealth management subsidiary, which had no involvement in the Direct Express program ("OCC Enforcement Agreement"). NSHEPP has not plausibly alleged that the market understood the OCC Enforcement Agreement to reveal risks to Comerica's chance of being renewed as Financial Agent for the Direct Express program. The OCC Enforcement Agreement concerned a wealth management subsidiary with no involvement in the Direct Express program. The only analyst report linking the OCC Enforcement Agreement to the Direct Express program was published on May 24, 2024, a day after the OCC Enforcement Agreement was announced, and concluded that the OCC Enforcement "shouldn't" impact Comerica's chances for renewal. Comerica's stock saw a modest increase of $0.53, or 1.05%, on May 24, 2024.

NSHEPP also has not plausibly alleged that the OCC Enforcement Agreement revealed that Comerica's previous statements regarding Comerica's financial reporting process were false or misleading. To the extent that analysts hypothesized that there was potential for widespread fraudulent conduct at Comerica, loss causation is not pled where a disclosure reveals only a "'risk' or 'potential' for widespread fraudulent conduct." *Metzler*, 540 F.3d at 1064.

9

## C. Third Disclosure

The third disclosure is the July 19, 2024 announcement that the Fiscal Service had preliminarily decided to not renew Comerica as Financial Agent for the Direct Express program. NSHEPP has not plausibly alleged that the market understood the Fiscal Service's preliminary decision to not renew Comerica as Direct Express Financial Agent as revealing fraud. A plaintiff must show that the market reacted to a fraudulent act itself rather than "the purported 'impact' of the alleged fraud." *Oracle*, 627 F.3d at 392. None of the alleged disclosures mention compliance issues in the Direct Express program, and none even speculate that the nonrenewal decision was a result of Comerica's noncompliance. NSHEPP has not adequately pled that the market reacted to Comerica's alleged fraud rather than "the far more plausible reason for the resulting drop," which is that Comerica lost a highly lucrative contract. *Metzler*, 540 F.3d at 1065.

2.     The district court did not abuse its discretion in denying leave to amend. Leave to amend is properly denied where "the complaint could not be saved by any amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citation modified). NSHEPP has offered various materials both to the district court and on appeal to show that the pleadings could be strengthened, but none of these materials are relevant. NSHEPP has not argued that any of these materials constitute corrective disclosures. Further, none of the

10

materials strengthen the corrective disclosures alleged. All documents post-date the three corrective disclosures alleged, and none strengthen NSHEPP's argument that fraud was removed from the market before the additional documents were published. Because the additional materials are not relevant, we deny NSHEPP's request for judicial notice (Dkt. 27). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 n.5 (9th Cir. 2018) ("An irrelevant fact could hardly be an adjudicative fact.") (quoting 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5104, at 156 (2d ed. 2005)).

Because the district court has twice dismissed the complaint for failure to plead loss causation and these additional materials would not strengthen NSHEPP's loss causation claim, amendment would be futile, and it was not an abuse of discretion to deny leave to amend.

3.      The district court did not abuse its discretion in denying NSHEPP's motion for reconsideration. NSHEPP has identified no clear errors of law or fact, newly discovered evidence, or changes in controlling law that would leave this court "with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

**AFFIRMED.**

11

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing and Petition for Rehearing En Banc (Fed. R. App. P. 40; 9th Cir. R. 40-1 to 40-4)**

**(1) Purpose**
**A. Panel Rehearing:**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ➢ A material point of fact or law was overlooked in the decision;
  - ➢ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ➢ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B. Rehearing En Banc**
- A party should seek en banc rehearing only if one or more of the following grounds exist:
  - ➢ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
  - ➢ The proceeding involves a question of exceptional importance; or

Post Judgment Form - Rev. 8/2025

1

> ➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing or rehearing en banc must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(d).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(d). The deadlines for seeking reconsideration of a non-dispositive order are set forth in 9th Cir. R. 27-10(a)(2).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-4.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

2

Post Judgment Form - Rev. 8/2025

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

## Petition for a Writ of Certiorari
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
    - ➤ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
    - ➤ **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

3

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

Name of party/parties requesting costs to be taxed:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                    **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee/Appeal from District Court filing portion of fee ($5) | | | | $ |
| | | | TOTAL: | $ |

***Example:*** *Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10); TOTAL: 4 x 500 x $.10 = $200.*